IN THE UNITED STATES DISTRCT COURT FOR THE
WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| VRAJ V. KAPATEL[1], <br><br>v. <br><br>PAM BONDI, Attorney General of the United States, *et al.* | Case No.: 1:25-CV-00103-SPB-WSH |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S
MOTION FOR PRELIMINARY INJUNCTION**

---

[1] Motion to Correct Case Caption from 'Patel' to 'Kapatel' currently pending at Dkt 11.

**INTRODUCTION**

Plaintiff, Vraj V. Kapatel, is a citizen and national of India. Plaintiff is an international student at Gannon University, where he has been seeking a bachelor's degree in Information Systems since January 2022. If permitted to finish this current academic semester, Plaintiff will require just 6 more credits to complete his degree.

On April 7, 2025, Immigration and Customs Enforcement (ICE), through the Student and Exchange Visitor Program (SEVP) abruptly and unlawfully terminated Plaintiff's Student and Exchange Visitor Information Systems (SEVIS) record stripping him of his ability to pursue his studies in the United States and putting him at risk of arrest, detention, and deportation. The reason stated for the termination of Plaintiff's SEVIS was simply as "Individual identified in criminal records check and/or has had their VISA revoked." It is unclear whether Plaintiff's visa has been revoked, however, as explained below it is immaterial to the instant proceedings.

The termination of a SEVIS record effectively ends F-1 student status. Even when a visa is revoked, ICE is not authorized to terminate Plaintiffs' student status. The grounds cited by ICE in the SEVIS terminations do not provide legal authority to terminate Plaintiff's SEVIS record. An F-1 visa controls a student's entry into the country, not their continued lawful presence once admitted. Plaintiff was in full compliance with the terms of his F-1 status and had not engaged in any conduct that would warrant the termination of his status.

On April 10, 2024, Plaintiff pleaded guilty plea to summary disorderly conduct under 18 Pa. S. C. §5503(A)(4) in Erie, PA. As a result of his plea, Plaintiff was ordered to pay $221.75 in fines and costs; which he paid promptly. Disorderly conduct under 18 Pa. S. C. §5503(A)(4) is a summary offense, and carries a maximum penalty of 90 days imprisonment. See 18 Pa. S. C. §1105. This guilty plea does not subject Plaintiff to inadmissibility or removability under the

Immigration and Nationality Act, nor does it subject Plaintiff to revocation of his Student Visa nor termination of his SEVIS status.

Plaintiff is not alone with respect to this abrupt termination of student status. Thousands of foreign students in the United States were recently notified by their schools that their F-1 student status was terminated for unspecified reasons.[2] DHS's act of unlawfully terminating SEVIS records appears to be designed to coerce students, including Plaintiff, into abandoning their studies and "self-deporting" despite not violating their status. If ICE believes a student is deportable, it has the authority to initiate removal proceedings and make its case in court. However, it cannot misuse SEVIS to circumvent the law, strip students of status, and drive them out of the country without process.

Because of this termination, Plaintiff faces imminent and irreparable harm as explained further below. In sum, Plaintiff faces potential immigration detention and deportation; he is no longer authorized to participate in his bachelor's program, which puts him in financial and career jeopardy; moreover, the abrupt termination of his F-1 student status in the SEVIS system will prevent him from making meaningful progress from obtaining his master's degree, for which he has paid significant tuition since 2022, and worked hard for academically.

Additionally, to the extent that Defendants argue that *only* Plaintiff's SEVIS record has been terminated – *not* his Student Status – then, as explained in detail below, Plaintiff has been placed into the legal equivalent of house-arrest, and backed into a corner wherein it is impossible for him to comply with the Student Status requirements/regulations. Further, if Plaintiff remains

---

[2] *See* eg. Dakin Andone, "Lawsuits seek to restore dozens of foreign students' legal status amid targeting by immigration authorities," *CNN* (Apr. 21, 2025), https://www.cnn.com/2025/04/21/us/international-students-immigration-lawsuits-visas/index.html.

out of status for 5-months, he will be unable to reinstate his F-1 student status in the future. *See Jie Fang v. Director United States Immigration & Customs Enforcement*, 935 F.3d 172, 176 (3d Cir. 2019) (noting that a student should not have been out of a valid F-1 student status for more than 5 months for a reinstatement application).

To be clear, Plaintiff does *not* challenge the revocation of Plaintiff's F-1 *visa* in this case. Instead, Plaintiff brings this lawsuit to challenge DHS's unlawful termination of his F-1 student *status* in the SEVIS system.

Because of these imminent and real harms, Plaintiff requests that the Court grant a preliminary injunction to (i) enjoin Defendants from terminating his F-1 student status under the SEVIS [Student and Exchange Visitor] system, and (ii) require Defendants to set aside their termination determination.

**ARGUMENT**

**I.  THE COURT SHOULD GRANT A PRELIMINARY INJUNCTION**

To obtain a preliminary injunction, the moving party must show: (1) a likelihood of "succe[ss] on the merits," (2) a likelihood that the moving party will "suffer irreparable harm," (3) that the "balance of equities" weighs in the moving party's favor, and (4) that injunctive relief is in "the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20, 129 S.Ct. 365, 172 L.Ed.2d 249 (2008). If the moving party has established the first two "most critical" factors, *Nken v. Holder*, 556 U.S. 418, 434, 129 S.Ct. 1749, 173 L.Ed.2d 550 (2009), the district court then performs a "balancing of the factors" *Reilly v. City of Harris*burg, 858 F.3d 173, 180 n.5 (3d Cir. 2017), to determine whether the prongs, "taken together, balance in favor of granting the requested preliminary relief," *Id*. at 179. Where the Government is the non-moving party in the immigration

4

context, the third and fourth factors generally "merge" into one. *Nken*, 556 U.S. at 435, 129 S.Ct. 1749.

    a. **Likelihood of Success on the Merits**

The Plaintiff alleges, among other counts, that Defendants violated the Administrative Procedure Act (APA), in terminating his SEVIS status through unauthorized agency action as well as arbitrary and capricious agency action. *See* Dkt 1. at p. 9-10.

Termination of SEVIS registration can only be done on one of the outlined grounds, one of which is a student's failure to maintain status. DHS regulations distinguish between two separate ways a student may become "out of status": (1) a student who "fails to maintain status," and (2) an agency-initiated "termination of status."

The first category, failure to maintain status, involves circumstances where a student voluntarily or inadvertently falls out of compliance with the F-1 visa requirements, for example by failing to maintain a full course of study, engaging in unauthorized employment, or other violations of their status requirements under 8 C.F.R. § 214.2(f). In addition, 8 C.F.R. §§ 214.1(e)–(g) outlines specific circumstances where certain conduct by any nonimmigrant visa holder "constitutes a failure to maintain status," such as engaging in unauthorized employment, providing false information to DHS, or being convicted of a crime of violence with a potential sentence of more than a year. Plaintiff does not fall within any of these subcategories.

With respect to the crime of violence category, 8 C.F.R. § 214.1(g) sets forth that a nonimmigrant's conviction "for a crime of violence for which a sentence of more than one year imprisonment may be imposed (regardless of whether such sentence is in fact imposed) constitutes a failure to maintain status . . . ." Minor misdemeanor or summary offenses do not meet this threshold for termination based on criminal history. Plaintiff does not fall under this subsection.

5

The second category, termination of status by DHS, can occur only under the limited circumstances set forth in 8 C.F.R. § 214.1(d), which only permits DHS to terminate status when: (1) a previously granted waiver under INA § 212(d)(3) or (4) [ 8 U.S.C. § 1182(d)(3) or (4)] is revoked; (2) a private bill to confer lawful permanent residence is introduced in Congress; or (3) DHS publishes a notification in the Federal Register identifying national security, diplomatic, or public safety reasons for termination.

DHS cannot otherwise unilaterally terminate nonimmigrant status. *See Jie Fang v. Dir. United States Immigr. & Customs Enf't*, 935 F.3d 172, 185 n. 100 (3d Cir. 2019). An arrest or a traffic citation is not a basis for termination of SEVIS per DHS's own regulations. *See* U.S. Department of Homeland Security, Study in the States – SEVIS Help Hub. "Termination Reasons" (December 3, 2024), available at https://studyinthestates.dhs.gov/sevis-help-hub/student-records/completions-and- terminations/termination-reasons, attached to Complaint at Exhibit D.

A student who has not violated their F-1 status, even if their visa is revoked, cannot have a SEVIS record terminated based on INA § 237(a)(1)(C)(i) [8 U.S.C. § 1227(a)(1)(C)(i)] (failure to maintain status), INA §237(a)(4)(C)(i) [8 U.S.C. § 1227(a)(4)(C)(i)] (foreign policy grounds), or any deportability ground for that matter.

Nothing in the Plaintiff's criminal history or other history, including immigration history, provides a basis for SEVIS termination. Defendant's termination of Plaintiff's SEVIS status is not in accordance with law, in excess of statutory authority, and without observance of procedure required by law. Further, Defendants failed to articulate the facts that formed a basis for their decision to terminate Plaintiff's SEVIS status in violation of the APA, let alone any rational connection between the facts found and the decision made. Accordingly, Plaintiff has a high likelihood of success on the merits of his case.

### b. Irreparable Harm if Preliminary Injunction is not Issued

Plaintiffs seeking a preliminary injunction or temporary restraining order must make a clear showing "that irreparable injury is likely in the absence of an injunction." *Winter*, 555 U.S. 7, 22 (2008).

Plaintiff will suffer irreparable injury if Defendants' termination determination is not set aside and enjoined.

First, it is important to clarify that Defendants have terminated Plaintiff's SEVIS record, which terminates his F-1 nonimmigrant student status as a matter of law. The regulations related to Student Status and SEVIS requirements buttress one another. *See, generally,* 8 C.F.R. §214.2(f) [Student Status] and 8 C.F.R. §214.3 [SEVIS]. Under the regulations, an international student will have violated their status – and thus lose their status – for example, in instances where 1) the student fails to retain for safekeeping a valid Form I-20[3], issued by the designated school official (DSO), *see* §214.2(f)(2); 2) they fail to update their address with the DSO within 10 days of change, and the DSO in turn must enter the new information in SEVIS within 21 days, *see* §214.2(f)(17); 3) the DSO fails to update a student's change in educational levels, *see* §214.2(f)(5)(ii); or 4) where the DSO fails to update a student's extension of his or her educational program, *see* §(f)(7)(iii). Accordingly, a student cannot maintain lawful student status when his SEVIS record has been terminated and the termination of one's SEVIS record is the lawful equivalent of terminating one's lawful student status – the requirement that a student retain a valid Form I-20 *alone* is impossible for Plaintiff to comply with due to Defendants' actions. As such, Plaintiff *is* removable under 8 C.F.R. §1227(a)(C)(I) ["Violated nonimmigrant status or condition of entry, (i) Nonimmigrant status violators. Any alien who was admitted as a nonimmigrant and

---

[3] Form I-20s are issued by the DSO from the student's SEVIS record. *See* 8 C.F.R.§214(f)(1)(ii).

who has failed to maintain the nonimmigrant status in which the alien was admitted or to which it was changed under section 1258 of this title, or to comply with the conditions of any such status, is deportable."].

Due to Defendant's unlawful actions, Plaintiff faces possible detention and deportation because of his lack of lawful non-immigrant status stemming from this termination. "[D]eportation is a drastic measure and at times the equivalent of banishment or exile. It is the forfeiture for misconduct of a residence in this country. Such a forfeiture is a penalty." *Costello v. Immigr. & Naturalization Serv.,* 376 U.S. 120, 128, (1964).

Second, pursuant to the regulations, Plaintiff must seek reinstatement within 5 months of loss of status. *See* 8 C.F.R. §214.2(f)(16)(i)(A). By enjoining the Defendants from terminating Plaintiff's student status, Plaintiff will not accrue days towards that 5-month regulatory benchmark. Additionally, for plaintiff to seek reinstatement now would be both futile and harmful to his immigration status. The accrual of these days is irreparable and unavoidable without court intervention.

For Plaintiff to seek reinstatement with U.S. Citizenship and Immigration Services *at this juncture* would be futile. *See Mathews v. Eldridge*, 424 U.S. 319, 329–30 & n. 10, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976) [Holding that a resort to the agency would be futile because the challenge is one that the agency has no power to resolve in the applicant's favor]. A student who has *violated* his status may seek reinstatement before USCIS. 8 C.F.R. §214.2(f)(16). There is nothing in the record which would indicate that Defendants accidentally terminated Plaintiff's SEVIS record or that Defendants are willing to reinstate Plaintiff's SEVIS record; and as such, it would be futile for Plaintiff to submit to USCIS a request for reinstatement when it would very likely be denied; especially considering that in doing so he would have to admit that he has violated his status –

8

which he has not. Further, if USCIS were to reinstate his status, ICE could simply turn around and terminate his status again in the same manner that they did on April 8, 2025, which they *believe* to be lawful.

Further, if USCIS denied his reinstatement request, Plaintiff would be worse-off than he is now, as he would then begin accruing unlawful presence against 8 C.F.R. §1182(a)(9)(B) [making an alien inadmissible to the United States for 3 years after they have accrued 180 days of unlawful presence, and for 10 years after they have accrued 365 days of unlawful presence]. *See Guilford Coll. v. Wolf*, No. 1:18CV891, 2020 WL 586672, at *1 (M.D.N.C. Feb. 6, 2020) [The unlawful-presence 'clock' would not begin to run against an F, M, or J visa holder until a government official—either an immigration judge or a USCIS adjudicator—formally identified an immigration status violation.].

Third, this termination will result in the loss of Plaintiff's academic studies and career trajectory. *Bridges v. Wixon*, 326 U.S. 135, 147 (1945) [Finding that the deprivation of the right to pursue a vocation or calling is a great hardship]. While courts have held that *delays* in education do not amount in irreparable harm; what Plaintiff suffers is far greater than a delay. *B.P.C. v. Temple Univ.*, No. CIV.A. 13-7595, 2014 WL 4632462, at *5 (E.D. Pa. Sept. 16, 2014). Plaintiff is in essence barred from pursuing his education in lawful status and barred, under the regulations, from seeking an extension of his student program (should he not finish within the time period stated in his I-20), or from seeking further education beyond his current educational program. *See* 8 C.F.R. §§214.1(f)(5)(ii); (f)(7)(iii). If permitted to continue his education, Plaintiff will be just 6 credits away from completing his degree. In order to complete his degree, Plaintiff's DSO, through the SEVIS system, will need to request an extension of his status and an exception to the full-courseload requirement – both of which require an active SEVIS record for Plaintiff.

Fourth, Defendants actions have in essence placed Plaintiff under a form of house-arrest. Pursuant to the regulations, Plaintiff cannot change addresses without updating his DSO, who must then update Plaintiff's SEVIS record, which has been terminated by Respondents. 8 C.F.R. §214.1(f)(17). If, during the pendency of this litigation Plaintiff were to move, or to be forced to move for reasons beyond his control, he would be in violation of the regulations. *Id.* Without court intervention, Plaintiff's freedom of movement is significantly curtailed.

Fifth, Defendants have stripped Plaintiff of the possibility of employment in connection with his student status. If permitted to continue his education, Plaintiff will be just 6 credits away from completing his degree and thereafter he will work in the United States pursuant to Optional Practical Training (OPT).[4] Due to the Defendant's actions, he cannot apply for or obtain OPT. 8 C.F.R. §214.1(f)(12)(ii) states, "A student must have a recommendation from his or her DSO in order to apply for OPT. When a DSO recommends a student for OPT, the school assumes the added responsibility for maintaining the SEVIS record of that student for the entire period of authorized OPT…"

Sixth, this termination will result in extreme financial and academic hardship to Plaintiff. Since August 2024, Plaintiff has paid over $30,000 per year in tuition, room, board and living expenses to pursue his degree in the United States – as a result, this abrupt and unlawful termination of his student status will cause him significant financial loss.

### c. Balance of Equities and the Public Interest.

Where the Government is the non-moving party in the immigration context, the third and fourth factors generally "merge" into one. *Nken*, 556 U.S. at 435, 129 S.Ct. 1749.

---

[4] Students who complete that course of study are entitled to apply for Optional Practical Training (OPT), which, if approved, allows them to remain for an additional year (and in cases of STEM degrees up to three years) working in their field of study.

By contrast, Defendants have advanced no substantial interest in terminating Plaintiff's F-1 student status; nor have they advanced a *lawful* interest in terminating Plaintiff's F-1 student status. Indeed, granting a preliminary injunction in this matter would merely maintain the status quo that has been in place for 3 years of Plaintiff's studies in the United States.

Defendants also have no legitimate interest in enforcing this unlawful termination or in exceeding their statutory and regulatory authority by terminating Plaintiff's F-1 student status in a manner that is contrary to federal law. The public interest would in fact be harmed by the enforcement of Defendant's termination determination that is repugnant to the United States Constitution. *Tirrell v. Edelblut*, No. 24-CV-251-LM-TSM, 2024 WL 3898544, at *6 (D.N.H. Aug. 22, 2024). And it is squarely in the public interest to enable individuals to partake of statutory and constitutional rights and meaningful judicial review where, as here, it is consistent with the process prescribed by Congress. *Osorio-Martinez v. Att'y Gen. United States of Am.*, 893 F.3d 153, 179 (3d Cir. 2018).

## CONCLUSION

For the foregoing reasons, the motion for preliminary injunction should be granted.

Respectfully Submitted,

Date: April 22, 2025

*s/ Christopher M. Casazza, Esq.*
Christopher M. Casazza PA Bar ID# 309567
Palladino, Isbell & Casazza, LLC
1528 Walnut St, Suite 1701
Philadelphia, PA 19102
p. (215) 576-9000
f. (215) 689-3531
chris@piclaw.com

Attorney for Plaintiff – *Pro hac vice*